IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| BLANCHE MANG AND LYNDA SHEPPARD | |
| AS PERSONAL REPRESENTATIVES OF | : |
| THE ESTATE OF MICHAEL MANG, | |
| et al. | : |
| | |
| v. | : Civil Action No. DKC 11-1891 |
| | |
| | : |
| CITY OF GREENBELT, MARYLAND, | |
| et al. | : |

**MEMORANDUM OPINION**

Presently pending and ready for review in this case is the motion to dismiss or for partial dismissal filed by Defendants City of Greenbelt, Maryland ("the City of Greenbelt"), Sgt. Matthew Carr, Pfc. Johnnie Guy, and Pfc. Young Hur. (ECF No. 6). The issues have been fully briefed, and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted in part and denied in part.

**I. Background**

**A. Factual Background**

Plaintiffs Blanche Mang and Lynda Sheppard, as personal representatives of the estate of Michael Mang, and Lynda Sheppard, in her individual capacity, allege the following facts.

In the early morning of May 26, 2010, Ms. Sheppard contacted the City of Greenbelt Police Department and requested

that someone "check on" the welfare of her son, Michael Mang. (ECF No. 2 ¶ 12).  Ms. Sheppard believed that Mr. Mang was asleep in her house.  In response to Ms. Sheppard's request, Sgt. Carr and Pfc. Guy accompanied her to her home and knocked on the door to wake Mr. Mang.  When Mr. Mang did not answer, Sgt. Carr and Pfc. Guy left.

Ms. Sheppard then went to the District Court Commissioner's Office and obtained a protective order and arrest warrant against Mr. Mang.  Mr. Mang had previously threatened her physically and destroyed property.  Ms. Sheppard believed that Mr. Mang was using controlled substances and alcohol.

Later that day, Ms. Sheppard returned to the City of Greenbelt Police Department to request assistance again.  Sgt. Carr, Pfc. Guy, and Pfc. Hur accompanied Ms. Sheppard to her home.  The officers could not enter her home, however, because the door was locked. At Ms. Sheppard's suggestion, the officers "jiggled" a window until the window could be opened.  (*Id.* ¶ 16).  Pfc. Hur entered Ms. Sheppard's home through the window, at which point he observed Mr. Mang sleeping on the living room sofa.

While Mr. Mang was still asleep, Pfc. Hur "grabbed" his wrists, which woke him, and advised him that he was under arrest.  (*Id.* ¶ 18).  Sgt. Carr entered the home through the same open window to assist Pfc. Hur in handcuffing Mr. Mang.

Lastly, Pfc. Guy entered through the window and proceeded to use a stun gun to force Mr. Mang into submission.  In their attempts to subdue Mr. Mang, the officers "punched and beat [him] repeatedly, ca[us]ing a fractured nose and numerous bruises." (*Id.* ¶ 22).[1]  Once Mr. Mang was subdued, the officers called for an ambulance.  Although the ambulance eventually arrived, the officers decided that Pfc. Guy would instead transport Mr. Mang in his cruiser to the hospital.

Pfc. Guy and Mr. Mang arrived at the hospital at around 5:37 a.m.  The hospital staff examined Mr. Mang.  According to hospital records, Mr. Mang was initially "awake, alert, cooperative and with an affect that [was] calm and appropriate" and "speaking coherently," though he complained of pain "in the left side of his head and left ribs."  (*Id.* ¶ 27).  Later, Mr. Mang also complained of chest pain and shortness of breath.  According to the records, Mr. Mang suffered from "bilateral abrasion to knees," an "episode of vomiting," and a "large b[ru]ise on left side of chest, lower abdomen, . . . tenderness . . . , [and] scratches to back."  (*Id.* ¶¶ 29-31).  At around 9:20 a.m., Mr. Mang was released into Pfc. Guy's custody.

---

[1] The complaint describes Mr. Mang as being 5'8" tall and weighing 140 pounds.  Ms. Sheppard remained near the window during the incident.

Pfc. Guy brought Mr. Mang to the City of Greenbelt Police Department and placed him in the "processing area" of the station. (*Id.* ¶ 33).  At around 9:55 a.m., Pfc. Guy noticed that Mr. Mang was lying unconscious on the floor.  Pfc. Guy called for assistance.  An ambulance took Mr. Mang back to the hospital where the hospital staff attempted to revive him. Their efforts were unsuccessful, and Mr. Mang was pronounced dead at around 10:46 a.m.

### B.   Procedural Background

On May 25, 2011, Plaintiffs filed a complaint against Defendants in the Circuit Court for Prince George's County, Maryland.  After service, Defendants timely removed to this court on the basis of federal question jurisdiction. (ECF No. 1).  The complaint contains nine counts:  (1) a violation of 42 U.S.C. § 1983 for excessive force against Sgt. Carr, Pfc. Guy, and Pfc. Hur, on behalf of both the estate of Mr. Mang and Ms. Sheppard in her individual capacity; (2) a violation of Article 24 of the Maryland Declaration of Rights for excessive force against Sgt. Carr, Pfc. Guy, and Pfc. Hur, on behalf of both the estate of Mr. Mang and Ms. Sheppard in her individual capacity; (3) battery against Sgt. Carr, Pfc. Guy, and Pfc. Hur, on behalf of the estate of Mr. Mang and Ms. Sheppard in her individual capacity; (4) negligence against Sgt. Carr, Pfc. Guy, and Pfc. Hur, on behalf of the estate of Mr. Mang and Ms. Sheppard in her

individual capacity; (5) negligent training and supervision against the City of Greenbelt, on behalf of the estate of Mr. Mang and Ms. Sheppard in her individual capacity; (6) "wrongful death" against Sgt. Carr, Pfc. Guy, and Pfc. Hur, on behalf of the estate of Mr. Mang; (7) *respondeat superior* against the City of Greenbelt on behalf of the estate of Mr. Mang; (8) wrongful death against Sgt. Carr, Pfc. Guy, and Pfc. Hur, on behalf of Ms. Sheppard in her individual capacity; and (9) *respondeat superior* against the City of Greenbelt on behalf of Ms. Sheppard in her individual capacity.

On July 11, 2011, Defendants answered the complaint. That same day, after filing the answer, they filed the pending motion to dismiss or for partial dismissal. (ECF No. 6). Plaintiffs filed opposition papers on July 25, 2011. (ECF No. 9). Defendants replied on July 27, 2011. (ECF No. 10).

## II. Standard of Review

Although Defendants style their motion as a motion to dismiss or for partial dismissal, it is actually a motion for judgment on the pleadings because they filed an answer to the complaint prior to their motion. Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial — a party may move for judgment on the pleadings." Under the circumstances here, the motion is governed by the same standard governing motions to

dismiss for failure to state a claim under Rule 12(b)(6). *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal marks omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, the court need not accept unsupported legal allegations. *See Revene v. Charles*

6

*Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"  *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## III. Analysis

Defendants move for judgment on the pleadings as to Counts Four, Five, Six, Seven, Eight, and Nine, opting not to contest the federal or state constitutional claims or the battery claim against Sgt. Carr, Pfc. Guy, and Pfc. Hur in Counts One, Two, and Three, except to argue that combining the claims on behalf of the estate of Mr. Mang and Ms. Sheppard individually in a single count is confusing.

Counts Seven and Nine of the complaint are both labeled "*respondeat superior*."  They are respectively asserted by the

estate of Mr. Mang and by Ms. Sheppard in her individual capacity. *Respondeat superior* is a theory of liability, not an independent cause of action. *See Mason v. Bd. of Educ.*, No. WMN-10-3143, 2011 WL 89998, at *2 n.3 (D.Md. Jan. 11, 2011). As Defendants recognized in their reply, Counts Seven and Nine allege that the City of Greenbelt is "vicariously liable for all of the individual officers' alleged misdeeds." (ECF No. 10, at 3). Despite Plaintiffs' inelegant pleading, their intent to allege all causes of action against the City of Greenbelt was evident, and the complaint will be so construed. As a result, it is appropriate to discuss whether the City of Greenbelt is an appropriate defendant in the counts in which it is not specifically named.

### A.   Count One:  42 U.S.C. § 1983

As to Count One, Defendants argue that "there is . . . no vicarious liability under § 1983," so judgment on the pleadings should be entered in favor of the City of Greenbelt. (ECF No. 6, at 5). Indeed, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Accordingly, the City of Greenbelt will not be included in Count One.

**B.   Count Two:   Article 24 of the Maryland Declaration of Rights**

As to Count Two, Defendants appear to concede that the City of Greenbelt may be vicariously liable for the state constitutional violations of its employees.  (ECF No. 6, at 4-5).  The Court of Appeals of Maryland has made clear that this is indeed the case:  "[L]ocal governmental entities do, indeed, have *respondeat superior* liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of the employment."  *DiPino v. Davis*, 354 Md. 18, 51-52 (1999).  Thus, Count Two will go forward against the individual Defendants and the City of Greenbelt.

**C.   Count Three:   Battery**

As to the state tort of battery in Count Three, the City of Greenbelt is entitled to immunity.  Under Maryland law,

> [a] local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity.

*DiPino*, 354 Md. at 47.   "Enforcing the criminal law is 'quintessentially governmental in nature.'"   *Hirpassa v. Prince George's Cnty., Md.*, No. RWT 09cv2631, 2010 WL 2730651, at *10 (D.Md. July 9, 2010) (quoting *DiPino*, 354 Md. at 48).   Here, the

cause of action giving rise to the battery claim arose out of an incident in which the City of Greenbelt was acting in a governmental capacity, so its governmental immunity shields it from liability. *See Morrill v. Prince George's Cnty., Md.*, No. AW-94-22, 1995 WL 626523, at *1 (D.Md. Aug. 15, 1995) (holding that governmental immunity protected county from liability for battery).

Accordingly, the City of Greenbelt will not be included in this count.

### D.   Count Four:   Negligence

In Count Four, Defendants seek judgment on the pleadings as to the individual Defendants based on statutory immunity under section 5-507(b)(1) of the Courts and Judicial Proceedings Article of the Maryland Code.   Pursuant to this section, "[a]n official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action."   Md. Code Ann., Cts. & Jud. Proc. § 5-507(b)(1).

In response, Plaintiffs contend that they have sufficiently pleaded that the individual Defendants acted with malice, so section 5-507(b)(1) does not protect them from suit.   (ECF No. 9, at 3-4).   The malice required to strip away statutory

immunity is "actual malice." *See Shoemaker v. Smith*, 353 Md. 143, 163 (1999). Under Maryland law, to act with actual malice means one "intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately injure the plaintiff." *Houghton v. Forrest*, 183 Md.App. 15, 26-27 & n.5 (2008) (internal quotations omitted) (synchronizing various definitions of actual malice used in immunity cases), *rev'd on other grounds*, 412 Md. 578 (2010). This court recently explained that for a complaint to survive a motion to dismiss:

> Plaintiffs asserting malice are held to a high pleading standard that may not be satisfied by conclusory allegations. *See Elliott v. Kupferman*, 58 Md.App. 510, 528 (1984) ("Merely asserting that an act was done maliciously, or without just cause, or illegally, or for improper motive does not suffice. To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious."); *Hovatter v. Widdowson*, No. CCB-03-2904, 2004 WL 2075467, at *7 (D.Md. Sept. 15, 2004) ("Although the amended complaint repeatedly states that all of the defendants acted with malice towards [Plaintiff], these bare legal conclusions are not binding on the court.").

*Ames v. Harford Cnty.*, No. RDB 09-1929, 2010 WL 1791547, at *4 (D.Md. May 4, 2010).

Here, Plaintiffs have sufficiently alleged that Defendants acted with actual malice. Plaintiffs point to paragraph 42 of the complaint as meeting the requirements for alleging malice,

but this paragraph is precisely the type of conclusory statement that *Ames* rejected as inadequate. Instead, actual malice can be inferred from paragraph 22 of the complaint, which reads: "During their attempts to force Michael Mang into submission, Sgt. Carr, Pfc. Guy and Pfc. Hur *punched and beat Michael Mang repeatedly, ca[us]ing a fractured nose and numerous bruises*." (ECF No. 2 ¶ 22) (emphasis added). Taken in the light most favorable to Plaintiffs, this allegation of repeated and injurious physical contact defeats Defendant's defense of statutory immunity at this stage of the pleadings. *See Solis v. Prince George's Cnty.*, 153 F.Supp.2d 793, 805 (D.Md. 2001) ("Officer Ruffin choked Plaintiff and struck him multiple times for no apparent reason. Such unjustified application of malignant force may give rise to a reasonable inference that Officer Ruffin was motivated by ill will toward or an affirmative intent to injure Plaintiff."); *Sawyer v. Humphries*, 322 Md. 247, 261 (1991) ("Wrestling another to the ground, pulling his hair, and hitting him on the face, again without cause or provocation, is certainly malicious conduct.").

Defendants reply that even if Plaintiffs' allegations are sufficient, it is not possible to plead both malice and negligence simultaneously, though they do not explain why this is so. (ECF No. 10, at 1-2). Based on their cited cases in support, which do not address this exact question, it seems that

12

Defendants are arguing that malice and intent are synonymous and that intent is incongruous with negligence. In Maryland, however, it is not correct to equate malice and intent, insofar as tort law and immunity are concerned. In *Thomas v. City of Annapolis*, 113 Md.App. 440 (1997), the Court of Special Appeals of Maryland reviewed the level of malice necessary to overcome an assertion of public official immunity. In concluding that actual malice was the appropriate standard, the court distinguished between malicious acts and intentional acts:

> In order to harmonize prior case law with the decision of the Court of Appeals in *Ashton* [*v. Brown*, 339 Md. 70 (1995)], we conclude that the cases using the term "malice" used it in a broad sense to include any deliberate, intentional, nonprivileged, non-legally justified act *or one committed with actual malice*."

*See id.* at 453-56 (emphasis added) (footnote omitted). Indeed, several Maryland courts have recognized that the concepts of actual malice and negligence are reconcilable. *See, e.g., Johnson v. Prince George's Cnty., Md.*, No. DKC 10-0582, 2011 WL 806448, at *7 (D.Md. Mar. 1, 2011) (denying summary judgment for defendant police officer on negligence claim because evidence of actual malice existed); *Williamson v. Prince George's Cnty., Md.*, No. DKC 10-1100, 2011 WL 280961, at *6 (D.Md. Jan. 26, 2011) (same); *Solis*, 153 F.Supp.2d at 805 (same); *see also Hines v. French*, 157 Md.App. 536, 564 (2004) (holding that a state

official could not invoke qualified immunity as a defense to a negligence claim because there was evidence that he acted with actual malice).   Therefore, Plaintiffs' allegation of actual malice on the part of the individual Defendants does not preclude their stating a negligence claim.

Again, however, the City of Greenbelt is entitled to immunity and will not be included in this count.

**E.   Count Five:   Negligent Training and Supervision**

In Count Five, Plaintiffs allege that the City of Greenbelt negligently failed to train and supervise properly its police officers, including the individual Defendants, in arresting suspects and placing them into custody.   Defendants argue that judgment on the pleadings should be entered in their favor as to this count based on the City of Greenbelt's governmental immunity.   As previously discussed, the City of Greenbelt is generally "immune from liability for tortious conduct committed while the entity is acting in a governmental capacity." *DiPino*, 354 Md. at 47.   The employment and supervision of police officers, which includes their training, is a governmental function, not private or proprietary. *Lanford v. Prince George's Cnty., Md.*, 199 F.Supp.2d 297, 302 (D.Md. 2002).   Thus, the City of Greenbelt is immune from allegations of negligent training and supervision, and Defendants' motion should be granted as to Count Five.

Plaintiffs contend that their negligent training and supervision claim actually arises under the United States Constitution and the Maryland Declaration of Rights, and governmental immunity does not apply to such violations. (ECF No. 9, at 4-5). Indeed, as Plaintiffs point out, to the extent their cause of action is *constitutional* in nature rather than at common law, governmental immunity would not apply. *See Town of Port Deposit v. Petetit*, 113 Md.App. 401, 419 (1997). As the complaint is structured, however, this argument is fairly disingenuous. Nowhere in Count Five do Plaintiffs mention or allude to either the United States Constitution or the Maryland Declaration of Rights. The most natural reading of the complaint leads to the conclusion that Plaintiffs' constitutional causes of action, whether federal or state, are limited to Counts One and Two, which are not presently at issue.

Even if Plaintiffs' sly reading of their own complaint is accepted, judgment on the pleadings in favor of Defendants would still be entered as to this count. Plaintiffs cite to *Drewry v. Stevenson*, No. WDQ-09-2340, 2010 WL 93268 (D.Md. Jan. 6, 2010), for the basic — and correct — proposition that a negligent supervision and training claim may constitute a constitutional violation. Indeed, as *Drewry* noted, the United States Supreme Court recognized that "a city can be liable under § 1983 for inadequate training of its employees." *City of Canton v.*

*Harris*, 489 U.S. 378, 388 (1989).  The Supreme Court strictly qualified the degree of fault that a municipality must exhibit, however, before it can be held liable for this sort of violation:

> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.  This rule is most consistent with our admonition in *Monell* [*v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978)], and *Polk County v. Dodson*, 454 U.S. 312, 326 (1981), that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*Id.* at 388-89 (second alteration in original).

Here, the complaint falls remarkably short of the threshold needed to state a claim for a constitutional deprivation based on a failure to train or supervise.  *See Drewry*, 2010 WL 93268, at *4 (dismissing a constitutional failure to train claim because the complaint "alleges no facts showing (1) the nature of the training of sheriff's officers by the County, (2) that any failure to train was a 'deliberate or conscious' choice by the County, or (3) that Stevenson's conduct was caused by a

failure to train"). Plaintiffs' allegations related to this count speak nothing of any actionable "policy or custom" or "deliberate indifference" to inhabitants, let alone any facts supporting these elements.[2] As *Drewry* itself notes, "[a] single incident of misconduct by a police officer is not sufficient to state a claim for inadequate training." *Id.*

Therefore, regardless of what type of failure to train and supervise claim Plaintiffs meant to advance, Defendants' motion will be granted as to this count.

**F.   Count Six:  "Wrongful Death" on Behalf of the Estate of Michael Mang**

Plaintiffs style Count Six as a wrongful death claim on behalf of the estate of Mr. Mang against the individual Defendants.[3]  Because this claim is brought on behalf of the estate of the decedent, however, it is more appropriately considered a survival action.  The Court of Appeals of Maryland explained:

> If a person is killed, two causes of action may arise.  In what has been referred to as

---

[2] In fact, the allegations in Count Five refer to a "duty of care" owed to Mr. Mang and a breach of that duty.  (ECF No. 2 ¶¶ 67-68).  This language bolsters the initial conclusion that Plaintiffs intended to bring a common law negligent hiring and supervision claim rather than a constitutional one.

[3] Again, Count Seven extends Plaintiffs' claims to apply to the City of Greenbelt.  As will be discussed, judgment on the pleadings will be entered in favor of Defendants on Count Six regardless of against whom it is asserted.

> a "survival" action, the personal
> representative of the victim may sue to
> recover, for the estate of the victim,
> damages for the economic and non-economic
> losses suffered by the victim prior to his
> or her death — the damages that the victim
> would have been able to recover had he or
> she survived. . . .
>
> In addition, if the deceased victim
> left a parent, spouse, or child (or, in the
> absence of such a person, any other person
> related to the victim by blood or marriage
> and who was substantially dependent on the
> victim), that person may sue, on his or her
> own behalf, for certain losses the person
> suffered by reason of the wrongful death of
> the victim. That is the "wrongful death" .
> . . action.

*Smith v. Borello*, 370 Md. 227, 233 (2002) (internal citations

omitted).

Defendants request judgment on the pleadings as to this

count by arguing that the survival statute cited by Plaintiffs,

Md. Code Ann., Est. & Trusts § 7-401(y), "does not provide an

independent basis of liability," and thus "Count[] VI . . .

cannot stand on [its] own." (ECF No. 6-1, at 4). Indeed,

Maryland's survival statutes did not create a new cause of

action. *See Trimper v. Porter-Hayden*, 305 Md. 31, 38-39 (1985),

*overruled on other grounds by* Md. Code Ann., Cts. & Jud. Proc. §

3-904(g)(2); *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 158-

59 (1972), *overruled on other grounds by Owens-Ill., Inc. v.

Zenobia*, 325 Md. 420 (1992); *see also* Md. Code Ann., Est. &

Trusts § 7-401(y) ("[A personal representative] may prosecute,

18

defend, or submit to arbitration actions, claims, or proceedings . . . for the protection or benefit of the estate, including the commencement of a personal action *which the decedent might have commenced or prosecuted . . . .*" (emphasis added)).  Although courts often use the term "survival action" loosely to refer to any claim brought by a decedent's estate, to be precise a "survival action" is merely the *mechanism* by which an estate brings a claim that the decedent could have asserted had he survived.  It is not a "claim" in the sense that, for example, one might assert a battery or negligence claim.[4]

In this case, Count Six fails to describe a separate tort or other claim that Mr. Mang could have brought had he survived the alleged beating.  At best, this count tries to allege a wrongful death claim, but a wrongful death claim can be maintained only by a decedent's relatives — not his estate. *Borello*, 370 Md. at 233.

Therefore, to the extent that Count Six attempts to state a claim for a "survival action" as an independent cause of action, judgment on the pleadings must be entered in favor of Defendants.[5]

---

[4] Thus, for example, Count Four of the complaint more precisely asserts a "survival action" for negligence.

[5] To the extent Plaintiffs seek damages such as compensation for medical and funeral bills in Count Six not otherwise sought

G.   **Count Eight: Wrongful Death on Behalf of Ms. Sheppard in Her Individual Capacity**

In contrast, Plaintiffs' assertion of a wrongful death claim in Count Eight on behalf of Ms. Sheppard in her individual capacity is styled correctly. Defendants contend that, like a survival action, the wrongful death statute does not provide an independent basis of liability. (ECF No. 6-1, at 5-6). This time, however, Defendants' argument is unavailing.

Unlike a "survival action," a wrongful death action is itself a claim that can be asserted. Under Maryland law, "[a]n action may be maintained against a person whose wrongful act causes the death of another." Md. Code Ann., Cts. & Jud. Proc. § 3-902; *see also Smith v. Westinghouse Electric Corp.*, 266 Md. 52, 55 (1972) (recognizing that this code provision "created a new cause of action"). Here, Plaintiffs properly allege a wrongful death claim on behalf of Ms. Sheppard in her individual capacity. Accordingly, this claim may proceed.[6] In reality

---

in other counts, judgment on the pleadings for Defendants on Count Six does not foreclose Plaintiffs' recovery. These damages are subsumed by the other "survival actions" brought by Plaintiffs, i.e., Counts One through Five.

[6] Plaintiffs concede, however, as they must, that punitive damages are not recoverable in a wrongful death action. *Figgie Int'l, Inc. v. Tognocchi*, 96 Md.App. 228, 244 n.4 (1993). Plaintiffs also concede that as to the City of Greenbelt generally, punitive damages are not directly recoverable. (ECF No. 9, at 6 n.2).

though, Count Eight is redundant of the claims by Ms. Sheppard in Counts One through Five.

With respect to the City of Greenbelt, Defendants' motion must be granted for the same reasons that their motion was granted as to the battery, negligence, and negligent training and supervision claims. Because the cause of action giving rise to the wrongful death claim arose out of an incident in which the City of Greenbelt was acting in a governmental capacity, its governmental immunity shields it from liability. *See Hirpassa*, 2010 WL 2730651, at *10 (holding that governmental immunity protected county from liability in a wrongful death action).

## IV. Conclusion

For the foregoing reasons, the motion to dismiss or for partial dismissal filed by Defendants City of Greenbelt, Maryland, Sgt. Matthew Carr, Pfc. Johnnie Guy, and Pfc. Young Hur will be granted in part and denied in part. A separate order will follow.

                                    /s/
                        _____
                        DEBORAH K. CHASANOW
                        United States District Judge